350 S.E.2d 688

**Lorea Gay CALDWELL**

v.

**Walter Glenn CALDWELL.**

No. 16805.

Supreme Court of Appeals of
West Virginia.

July 10, 1986.

Rehearing Denied Dec. 18, 1986.

Susan K. McLaughlin, Fairmont, for appellant.

Frank Mascara, Fairmont, for appellee.

BROTHERTON, Justice:

This is an appeal by Lorea Gay Caldwell from a final decree entered in a divorce proceeding by the Circuit Court of Marion County on July 19, 1985. That decree set aside a previous order respecting the distribution of the proceeds from the sale of the parties' marital home and directed that the

net proceeds be divided equally between the parties. On appeal the appellant contends that the trial court erred in setting aside the prior ruling and in directing that the proceeds from the sale of the marital home be divided evenly. We disagree, and we affirm the judgment of the Circuit Court of Marion County.

On April 4, 1970, the appellant and Walter Glenn Caldwell were married. After their marriage, they purchased a marital home for approximately $60,000.00. The appellant invested $25,000.00 from property which she owned before her marriage to Walter Glenn Caldwell in the new house.

In 1977 the appellant and Walter Caldwell sold the house, previously purchased for $60,000.00, for $85,000.00. They applied the net proceeds from the sale to the purchase of another house. The other house, their second marital home, was titled in the names of the appellant, Lorea Gay Caldwell and Walter Glenn Caldwell, as joint tenants with the right of survivorship.

After the purchase of the second house the appellant and her husband began experiencing marital difficulties, and, on July 10, 1982, they executed a deed revoking the right of survivorship in the house and creating a tenancy in common without the right of survivorship. Subsequently, the parties decided to divorce and entered into a property settlement agreement which provided that in the event the marital home was sold the net proceeds from the sale were to be divided equally between the parties. The parties were divorced by decree entered on July 16, 1982.

The parties were remarried on December 29, 1983. The second marriage was also unsuccessful, and the parties again sought a divorce. A hearing was held on the second divorce petition by Judge Meredith of the Circuit Court of Marion County on August 27, 1984. On August 27 Judge Meredith ruled that the appellant had carried to the first marriage $25,000.00 in assets which she was entitled to recoup upon divorce. He further ruled that the residue of the net proceeds from the sale of the parties' marital home should be divided equal-

ly between the appellant and Walter Glenn Caldwell. In effect, Judge Meredith ruled that the marital home be sold, that the first $25,000.00 of the proceeds was the separate property of the appellant and should go directly to her, and that the balance of the proceeds was marital property which, under the principles of equitable distribution, was to be divided equally. Judge Meredith also ruled that the previous divorce decree between the parties and the previous settlement agreement to divide the proceeds of the sale of the marital home had no effect on the equities between the parties since the parties had remarried and since the contingency in the agreement, the sale of the real property, had never occurred.

A property-division order reflecting Judge Meredith's decision was prepared and signed by both parties and was entered. The order dealt only with property questions between the parties and did not address the divorce question.

After entry of the property division order, a final divorce order was prepared for entry. That order incorporated the provisions relating to the division of the property. After preparation of the final divorce order, but before its entry, Walter Glenn Caldwell hired a new lawyer who petitioned for a rehearing in the matter. A rehearing was held on September 28, 1984. At the conclusion of the rehearing Judge Meredith affirmed his previous rulings and directed that those rulings be incorporated into the final divorce decree. The attorney for the appellant prepared the final decree, but counsel for Walter Glenn Caldwell did not sign it, and it was not entered. Judge Meredith died on December 1, 1984. As a result, the final divorce decree was not entered.

After Judge Meredith's death, Walter Glenn Caldwell requested that the new circuit judge, Judge Merrifield, reconsider Judge Meredith's disposition of the case. Judge Merrifield reconsidered the matter and, by letter opinion dated May 29, 1985, rescinded Judge Meredith's order. On July 19, 1985, he entered the order from which the appellant now appeals. Essentially, the

July 19, 1985, order directed that the net proceeds from the marital home be equally divided and that the appellant be denied credit for $25,000.00 in equity which she claims she carried into the marriage.

On appeal the appellant makes two assignments of error. First, she claims that Judge Merrifield's order effectively rescinded Judge Meredith's order even though there were no circumstances justifying the setting aside of that order. Secondly, she contends that the final decree, as entered by Judge Merrifield, erroneously applied the separate property doctrine of *W.Va. Code* § 48-2-1 *et seq.* in that it implicitly denied the appellant the $25,000.00 which she took into the first marriage and which was legally her separate property.

With regard to the first point, that Judge Merrifield, erred in setting aside Judge Meredith's order, the appellant argues extensively that Rule 60(b) of the Rules of Civil Procedure requires that an order not be set aside except upon a showing of mistake, newly discovered evidence, or the other factors listed in the rule. She claims that those factors were not present in her case.

West Virginia Rule 60(b) is substantially the same as Rule 60(b) of the Federal Rules of Civil Procedure,[1] and Federal cases have been extensively used in interpreting the West Virginia Rule. *See, e.g., N.C. v. W.R.C.,* 173 W.Va. 434, 317 S.E.2d 793 (1984); *Coury v. Tsapis,* 172 W.Va. 103, 304 S.E.2d 7 (1983). The Federal cases make a distinction between final orders and interlocutory orders and indicate that:

> Interlocutory orders and judgments are not within the provisions of 60(b), but are left to the plenary power of the court that rendered them to afford such relief from them as justice requires.

7 J. Moore, *Moore's Federal Practice* ¶ 60.20 (2d ed.1985); *see, Laffey v. Northwest Airlines, Inc.,* 642 F.2d 578 (D.C.Cir. 1980); *Campos v. Puerto Rico Sun Oil*

Co., 536 F.2d 970 (1st Cir.1976); *Cohn v. United States,* 259 F.2d 371 (6th Cir.1958).

In the early West Virginia case of *McKinney v. Kirk,* 9 W.Va. 26 (1876), this Court indicated that an order was interlocutory rather than final where the order failed to adjudicate all the issues in a case. This is essentially the same principle followed today except that under Rule 54 of the Rules of Civil Procedure a trial court is authorized to make an order final by making "an express determination that there is no just reason for delay" coupled with "an express direction for the entry of judgment." Rule 54(b), West Virginia Rules of Civil Procedure; *see* M. Lugar & L. Silverstein, *W.Va. Rules* p. 399, *et seq.* (1960).

The Federal concept of an interlocutory order is essentially the same. Additionally, Federal law holds that an interlocutory order is generally subject to revision by the trial court:

> In the absence of the "express determination" and "express direction" provided for by Rule 54(b), an adjudication of one or more but less than all of the claims in an action, or an adjudication as to fewer than all the parties, is interlocutory and subject to revision at any time before the entry of judgment adjudicating all the claims, or adjudicating the rights and obligations of all the parties.

7 J. Moore, *Moore's Federal Practice* § 60.20 (2nd ed.1985).

The general rule relating to the authority of a trial court to revise an interlocutory order has been carried into divorce law, and it has been recognized that:

> While the court in an interlocutory judgment may properly determine the status of the property of the parties, their rights therein, and how the property ought to be assigned ultimately, the actual division of the property cannot be made until the final decree is granted, and an order in a divorce suit as to the disposition or restoration of property can become effective only when the decree

---

**1.** The main difference between the West Virginia rule and its Federal counterpoint is that the time for bringing a 60(b) motion on grounds of excusable neglect is eight months under the

West Virginia rule and one year under the Federal rule. *Coury v. Tsapis* 172 W.Va. 103, 304 S.E.2d 7 (1983). This difference has no bearing upon the case presently under consideration.

nisi or interlocutory decree ripens into a final decree.

27B C.J.S. *Divorce* § 300(1) (1959); *see, Carew v. Carew*, 175 Cal.App.2d 706, 346 P.2d 845 (1959); *Walton v. Walton*, 223 Ga. 85, 153 S.E.2d 554 (1967). It is also recognized that: "... such decree settles the rights of the parties for the time being until the status is changed by some proceeding or order, or by their resumption of marital relations." 27B C.J.S. *Divorce* § 300(1) (1959); *see, Gump v. Gump*, 42 Cal.App.2d 64, 108 P.2d 21 (1940).

■ These principles, as well as the cases from which they are elucidated, indicate that it is not improper for a trial court to enter an interlocutory order relating to the disposition of property. However, that order is not final and does not become final until a final divorce decree is entered. It is implicit in the cases that the trial court retains the authority to alter the property settlement arrangement until such time as a final decree is entered.

■ In the case presently under consideration Judge Meredith's property order was interlocutory rather than final since it did not grant a divorce and thus dispose of all the issues in the case and since the Judge did not expressly direct that it was final. Because it was interlocutory, the Court is of the opinion that Judge Merrifield had authority to reconsider it, until entry of the final decree, even in the absence of the circumstances listed in Rule 60(b).

The appellant's second contention is that the trial court erred in directing that the proceeds from the sale of the marital home be divided evenly. Essentially, the appellant takes the position that when she married Walter Caldwell she had $25,000.00 in assets which she later contributed to the purchase of the parties' marital home. In effect, she claims that she carried $25,-000.00 to the marriage and that the trial court should have treated that $25,000.00 as her personal property and should have awarded her that sum out of the proceeds of the sale of the marital residence before the marital property of the parties was split evenly.

*West Virginia Code* § 48-2-32(a), which governs the division of marital property, provides as a general rule that:

Except as otherwise provided in this section, upon every judgment of annulment, divorce or separation, the court shall divide the marital property of the parties equally between the parties.

An exception to that rule is contained in *W.Va. Code* § 48-2-32(c)(1), which indicates that funds which are separate property are to be awarded to the party whose property they are. Separate property is defined by *W.Va. Code* § 48-2-1(d)(1) as property acquired by a person before marriage.

■ Under the peculiar facts of the case presently under consideration, it appears that when the parties were initially married on April 4, 1970, the appellant did carry to the marriage assets worth $25,000.00. The 1970 marriage subsequently ended in a divorce, and, as a part of the divorce settlement, it was agreed that the equity which the appellant had contributed to the parties' marital home would be equally divided between them. At that juncture the parties were no longer married, and they were each entitled to one-half of the proceeds from the sale of the marital home by virtue of the property settlement agreement and the divorce decree. Because of this, when the parties were remarried on December 29, 1983, they carried equal equities in the marital home into the second marriage.

The real question in the present case is whether the court should look behind the second marriage and grant the parties the separate property which they had when they first married.

There is substantial authority from other jurisdictions indicating that where parties enter into multiple marriages, and the final one is terminated by divorce, the trial court, in making a distribution of property in the final divorce proceeding, should consider only the property which they carried into the final marriage. For instance, in *Moore v. Moore*, 249 Ga. 27, 287 S.E.2d 185 (1982), the wife claimed that her remarriage to her former husband annulled the

adjustment of the parties' property rights made at the time of their prior divorce. The appellate court rejected her contention and stated that only property acquired during the latest marriage could be divided at the time of the latest divorce. The court indicated that property which was awarded to a party to a divorce remained that party's individual property in the event of a remarriage to the former partner. Likewise, in *Blomberg v. Blomberg,* 367 N.W.2d 643 (Minn.Ct.App.1985) the parties' first divorce decree did not mention the husband's nonvested, unmatured pension rights earned during marriage. The appellate court held that in dividing the property of their second marriage only the portion of pension rights earned during the second marriage could be considered. The court stated: "[P]roperty acquired before marriage is non-marital property. The pension rights at issue here were acquired before the second marriage and thus are not a part of the estate of the second marriage." 367 N.W.2d at 644.

In *Flanagan v. Flanagan,* 656 S.W.2d 1 (Tenn.App.1983), a somewhat similar case, the parties married each other on three separate occasions. The trial court inquired into the property dispositions which had been made in the parties' prior divorce proceedings in determining the amount of alimony which should be granted to the wife in the final divorce proceedings. The appellate court concluded that the inquiry constituted reversible error since what happened in the prior divorce proceedings was irrelevant to the one under consideration. The court stated:

> The occurrences during previous marriages are not pertinent. The previous decrees settled all issues then existent between the parties and they may not be resurrected in this proceeding. It is the same as if they had been previously married to different people.

*Flanagan v. Flanagan, supra* at 3.

■ Given this authority, the Court is of the view that upon the granting of a divorce of parties who were previously divorced and remarried, a trial court should not alter the property settlement made upon the first divorce, and property received by the parties as their separate property in the settlement in the first divorce should be considered their separate property upon remarriage and should be distributed as such in a divorce ending the remarriage. Under this rule the Circuit Court of Marion County did not commit reversible error in its property distribution decision in the case presently under consideration.

For the reasons stated, the judgment of the Circuit Court of Marion County is affirmed.

Affirmed.