358 S.E.2d 217

Charlee Farley McCOMAS

v.

Billy S. McCOMAS

No. 16755.

Supreme Court of Appeals of West Virginia.

May 20, 1987.

134

Lafe C. Chafin, Huntington, for appellant.

James A. Dodrill, Huntington, for appellee.

PER CURIAM:

This is an appeal from a final order of the Circuit Court of Cabell County, entered July 19, 1984, which granted the parties a divorce on grounds of irreconcilable differences. At issue in this appeal is the lower court's division of the couple's marital property. We conclude that the lower court erred in its disposition of the parties' assets, and we reverse the judgment of the circuit court and remand the case for further proceedings.

The parties, Charlee Farley McComas and Billy S. McComas, were married on November 29, 1968 in Cabell County and resided there throughout their marriage. No children were born as a result of the union. In May 1982, the parties separated, and Mrs. McComas subsequently instituted divorce proceedings on grounds of irreconcilable differences and cruelty. Mr. McCo-

mas filed an answer and a counterclaim seeking a divorce on the same grounds.

The evidence taken below shows that both parties worked outside the home and that Mrs. McComas handled most of the couple's financial affairs throughout the marriage. Mr. McComas would deduct from his salary a sufficient amount of cash to cover his personal expenses until his next payday and give the rest to Mrs. McComas to do with as she saw fit. Mrs. McComas attempted to pay the household expenses from her own salary and to save as much of her husband's income as possible for investments. At the time of the separation the assets of the parties consisted of the following: the jointly-owned marital abode located at Cyrus Creek, Cabell County, which was purchased in 1981 with the earnings of both of the parties; a home located in Ada, Ohio, which was purchased by Mrs. McComas prior to the marriage; a mobile home purchased by Mr. McComas in 1970 in the joint names of the parties, which served as the marital abode until the purchase of the Cyrus Creek property; a jointly-owned $10,000 certificate of deposit; and a joint savings account containing approximately $3000.

In May 1982, shortly after the parties separated, Mr. McComas transferred the certificate of deposit to his name without the knowledge or consent of Mrs. McComas. In October 1982, Mr. McComas' mother died, and Mrs. McComas authorized him to cash the certificate of deposit to pay the funeral expenses. In May 1983, Mr. McComas cashed the certificate of deposit and closed out the parties' joint savings account. He used approximately $1,300 of this money to pay his mother's burial expenses, and approximately $1,000 more to pay off a joint tax indebtedness incurred during the marriage as a result of Mrs. McComas' partnership with several members of her family. The rest of the money Mr. McComas used for living expenses. Shortly thereafter Mr. McComas transfer-

red title to the mobile home in which he was then living to his brother for a consideration of $5.00.

In her divorce complaint, Mrs. McComas sought possession of all household goods, effects and furniture at the Cyrus Creek property and ownership of the Ohio property, where she was then residing. She further requested that the Cyrus Creek residence and the mobile home be sold and that she be awarded one-half of the proceeds. Finally, Mrs. McComas sought to recover one-half of the value of the joint certificate of deposit and the joint savings account which existed at the time of the separation. Mr. McComas, in his counterclaim, sought ownership of the Cyrus Creek residence and asked that the Ohio property be sold and that he be awarded one-half of the proceeds. Mr. McComas denied that his wife had any interest in the certificate of deposit or the savings account.[1]

By order dated July 17, 1984, the circuit court granted the parties a divorce on the grounds of irreconcilable differences. The court found nothing fraudulent in Mr. McComas' acquisition of the funds in the joint bank account and joint certificate of deposit and concluded that Mrs. McComas was not entitled to any share of the proceeds thereof. The circuit court further found that the mobile home was titled in such a way as to allow either of the parties to transfer the property and that the proceeds realized from the sale thereof were not significant enough to establish any loss on the part of Mrs. McComas. The court awarded each party the personal property in his or her possession at the time of the decree, granted Mrs. McComas the sole use and possession of the Ohio property and Mr. McComas the sole use and possession of the Cyrus Creek property. It is from this order that Mrs. McComas now prosecutes this appeal.

The first contention on appeal is that the circuit court erred in not requiring the sale

---

1. In addition, there were allegations in both the complaint and the counterclaim concerning an alleged indebtedness of Mr. McComas to Mrs. McComas' father, the possession and ownership of an antique automobile, reimbursement to Mr. McComas of sums expended in support of Mrs. McComas' father and brothers and the registration and ownership of a pistol. These matters form no part of this appeal and will not be discussed herein.

of the mobile home and awarding Mrs. McComas one-half of the proceeds. Mrs. McComas contends that the conveyance was fraudulent in that it was undertaken with the intent to deprive her of her interest therein. Mr. McComas asserts that he had been ill at the time of the conveyance and transferred the title to the mobile home, in which he had been living, to his brother for safekeeping in the event something should happen to him.

■ We have recognized that a conveyance of assets by one spouse with the intent to deprive the other spouse of a portion of the marital estate is *per se* fraudulent. *Wallace v. Wallace,* 170 W.Va. 146, 291 S.E.2d 386 (1982). Conveyances to relatives, particularly in the face of litigation, are subject to particular scrutiny. *Patterson v. Patterson,* 167 W.Va. 1, 277 S.E.2d 709 (1981), *overruled on other grounds, LaRue v. LaRue,* 172 W.Va. 158, 304 S.E.2d 312 (1983).

■ Here, however, there was no showing that the transfer of the mobile home resulted in any significant diminution of Mrs. McComas' interests. The consideration for the conveyance was $5.00. While this is unquestionably a minimal consideration, there is no evidence that it was grossly inadequate. The mobile home was approximately 13 years old, and no evidence was offered as to its fair market value at the time of the transfer. The circuit court found that Mr. McComas was empowered to transfer the mobile home and that its sale resulted in no appreciable loss to Mrs. McComas.

It is well settled that "[i]n a divorce suit the finding of fact of a trial chancellor based on conflicting evidence will not be disturbed on appeal unless it is clearly wrong or against the preponderance of the evidence." Syllabus point 1, *Marcum v. Browning,* 171 W.Va. 5, 297 S.E.2d 204 (1982); Syllabus, *Waller v. Waller,* 166 W.Va. 142, 272 S.E.2d 671 (1980); Syllabus point 4, *Belcher v. Belcher,* 151 W.Va. 274, 151 S.E.2d 635 (1966); Syllabus point 3, *Taylor v. Taylor,* 128 W.Va. 198, 36 S.E.2d 601 (1945). In view of the evidence

presented below, we find no reversible error in the trial court's ruling on this point.

The same cannot be said, however, of the lower court's conclusion that Mrs. McComas was not entitled to any share of the funds in the parties' joint savings account or of the proceeds of the joint certificate of deposit existing at the time of the separation. Clearly, Mr. McComas' conversion of these assets substantially reduced the value of the marital estate, and, as a consequence, Mrs. McComas' interest therein.

■ Mr. McComas' contention that his wife had no interest in these funds is clearly untenable. "Prior to the death of a donor depositor, a rebuttable presumption exists under the provisions of Code, 1931, 31A–4–33, as amended, that the ownership of the funds is joint, a presumption which may be overcome by competent evidence." Syllabus point 3, *Dorsey v. Short,* 157 W.Va. 866, 205 S.E.2d 687 (1982). Mr. McComas produced no evidence at the hearing below to rebut this presumption. "[W]ithdrawal of the funds by the donor depositor does not conclusively rebut the presumption...." *Simmons v. Simmons,* 171 W.Va. 170, 174, 298 S.E.2d 144, 147 (1982). *See also Conner v. Conner,* 175 W.Va. 512, 334 S.E.2d 650 (1985). This is particularly true when the withdrawal is without the knowledge or consent of the other depositor.

■ Moreover, all of the other evidence supports the conclusion that these assets were owned jointly. The certificate of deposit was purchased with the earnings and savings of both parties. The accumulation of these funds and those in the savings was made possible only by Mrs. McComas' expenditure of her own earnings to maintain the household. In view of Mrs. McComas' substantial economic contribution to the accumulation of these assets, the sums in the savings account and the proceeds of the certificate of deposit must be held to have been jointly owned property. Accordingly, the lower court erred in failing to award Mrs. McComas a share of these funds.

Of course, Mrs. McComas did ultimately consent to Mr. McComas' use of part of the proceeds of the certificate of deposit to pay

for his mother's burial expenses. The funds expended by Mr. McComas for this purpose, in the amount of $1300, must be viewed as a gift from his wife. In addition, it appears that Mr. McComas used approximately $1000 of the funds to pay off a joint tax liability incurred during the marriage. On remand the circuit court may take into consideration the value of these expenditures.

The only remaining assignment of error concerns the circuit court's award to Mrs. McComas of the exclusive possession and use of the Ohio residence. The evidence below shows that Mrs. McComas purchased this property prior to the marriage. In 1969, Mrs. McComas refinanced a portion of her mortgage to pay for improvements to the property. The refinancing was done through her credit union at work, and all payments toward the indebtedness were deducted directly from Mrs. McComas' paycheck. Although Mr. McComas made no contribution to retiring the indebtedness, he was apparently named as joint owner of the Ohio in a deed prepared when the property was remortgaged. Mrs. McComas contends that this evidence demonstrates that the Ohio residence was her separate property and that the trial court therefore erred in not granting her title to the property.

■ It cannot be questioned that a spouse has no interest, upon dissolution of a marriage, to the separate property the other spouse has brought to the marriage. *See Caldwell v. Caldwell*, 177 W.Va. 61, 350 S.E.2d 688 (1986); *LaRue v. LaRue*, 172 W.Va. 158, 304 S.E.2d 312 (1983). *See also* W.Va.Code § 48–2–32(c)(1) (1986 Replacement Vol.). As a general rule, where one spouse transfers, delivers or conveys his or her separately-owned property to the other spouse, the transaction gives rise to a presumption that the transfer was intended as a gift. *Davis v. Davis*, 137 W.Va. 213, 70 S.E.2d 889 (1952); *Keller v. Washington*, 83 W.Va. 659, 98 S.E. 880 (1919); *Effler v. Burns*, 70 W.Va. 415, 74 S.E. 233 (1912); *Horner v. Huffman*, 52 W.Va. 40, 43 S.E. 132 (1903); *Miller v. Cox*, 38 W.Va.

747, 18 S.E. 960 (1894). The presumption of gift may be rebutted, however, by evidence of a contrary intent or by evidence that the spouse whose property was transferred was ignorant or unaware of the transaction. *See Patterson v. Patterson, supra; Whitten v. Whitten,* 70 W.Va. 422, 74 S.E. 237 (1912); *Standard Mercantile Co. v. Ellis,* 48 W.Va. 309, 37 S.E. 593 (1900).

■ The record before this Court indicates that the transfer of title to Mr. McComas as joint owner of the Ohio property may have been inadvertent. Moreover, since it appears that Mr. McComas contributed nothing to the acquisition or maintenance of the Ohio property, allowing him to retain an undivided one-half interest in it would, in the opinion of this Court, amount to unjust enrichment. We conclude, therefore, that under the facts and circumstances of this case, the evidence is sufficient to overcome the presumption of gift resulting from the transfer of title to the Ohio property to Mr. McComas as joint owner.

■ At the time this case was submitted for decision, the circuit court had only very limited power to order transfer of legal title in disposing of the marital estate of the parties to a divorce. *See McKinney v. Kingdon,* 162 W.Va. 319, 251 S.E.2d 216 (1978); *Patterson v. Patterson, supra.* Since that time, however, the Legislature has substantially revised the domestic relations law of this State with respect to the division of marital property. 1984 W.Va. Acts, ch. 60. W.Va.Code § 48–2–32(d)(7)(A) (1986 Replacement Vol.) now authorizes a circuit court to "[d]irect either party to transfer their interest in specific property to the other party" in order to achieve equitable distribution of the marital estate. On remand, the circuit court here should apply the provisions of the equitable distribution statute and, as part of the disposition of marital assets, should order Mr. McComas to transfer his interest in the Ohio property to Mrs. McComas.[2]

2. The provisions of W.Va.Code § 48–2–32 were    not previously available to the parties by virtue

For the reasons stated herein, the judgment of the Circuit Court of Cabell County is reversed, and the case is remanded to that court for further proceedings in accordance with the opinion of this Court.

Affirmed, in part; reversed, in part. Remanded with instructions.

of W.Va.Code § 48–2–36 (1986 Replacement Vol.), which provided that the 1984 amendments to the domestic relations laws were not "applicable to actions filed under the provisions of this article in which, prior to the effective date [June 8, 1984] of ... such amendments ... the taking of evidence has been completed and the case has been submitted for decision." Since this case is being resubmitted for decision on remand, however, the parties may now avail themselves of the provisions of the equitable distribution statute.