375 S.E.2d 427

**Ervin VANCE**

v.

**Margaret Joan VANCE.**

**No. 17695.**

Supreme Court of Appeals of
West Virginia.

Nov. 28, 1988.

**64**

Charles T. Bailey, Bailey & Wagner, Logan, for appellant.

Bernard L. Spaulding, Logan, for appellee.

PER CURIAM: ·

This is an appeal from a final order of the Circuit Court of Logan County, entered April 7, 1987, which granted the parties a divorce on grounds of irreconcilable differences. At issue in this appeal is the lower court's division of the couple's assets. We conclude that the lower court erred in its disposition of the parties' property, and we reverse the judgment of the circuit court and remand the case for further proceedings.

The parties, Ervin Vance and Margaret Joan Vance were married on December 14, 1973 in Logan County. The union produced one child, now emancipated. The parties began to experience marital difficulties in 1978 and separated a number of times, but always reconciled. In August 1985, the parties separated permanently, and Mr. Vance subsequently instituted divorce proceedings on grounds of irreconcilable differences and mental cruelty. Mrs. Vance filed an answer and counterclaim seeking a divorce on the same grounds.

The evidence adduced below showed that shortly before the marriage, Mr. Vance had purchased an ambulance business. After the marriage both parties worked in the business and were paid equal monthly salaries. Mrs. Vance initially did the paperwork in the office, but when she later qualified as an emergency medical technician, her duties were expanded to include driving the ambulances and rendering emergency medical services as well.

Prior to the marriage, Mrs. Vance had purchased a home in Crooked Creek and a lot in Mitchell Heights. In 1974 the parties contracted to build a house on the Mitchell Heights lot. Mrs. Vance sold the Crooked Creek home and applied the proceeds to the construction of the Mitchell Heights home, which was titled in the names of the parties jointly. The parties, their daughter and Mrs. Vance's three children from previous relationships moved into the Mitchell Heights home in 1976. Mrs. Vance was primarily responsible for homemaking and child rearing services throughout the marriage.

In 1977, Mr. Vance sold the ambulance business, but the buyer was subsequently unable to fulfill his obligation. Each of the parties then acquired 50% of the corporate stock and assumed joint ownership of the business. In 1981, Mrs. Vance transferred her interest in the business to her husband. In May 1983, Mr. Vance ceased working due to an injury, although he continued to receive a paycheck from the business until October 1983. Mrs. Vance ran the ambu-

lance service alone until May 1985, when it apparently went out of business.

On August 25, 1985, the parties separated. Three days later, Mr. Vance cashed two certificates of deposit in the amount of $40,000. These investments, purchased by Mr. Vance in 1983 and 1984 with his earnings during the marriage, were titled in his name alone. On September 5, 1985, Mr. Vance instituted divorce proceedings in the Circuit Court of Logan County.

In his complaint, Mr. Vance sought title to the marital home, the household goods and furnishings and the parties' automobile. In her counterclaim, Mrs. Vance requested return of her separate property, including the proceeds of term life insurance policies on her children, and equitable distribution of the couple's marital property, including the marital home and household goods, the automobile, the proceeds of the certificates of deposit and the assets of the ambulance business. Mrs. Vance asserted that she had contributed to the acquisition, maintenance and improvement of this marital property by donating her earnings and assets and her homemaker and child care services.

By order dated April 7, 1987, the circuit court granted the parties a divorce on grounds of irreconcilable differences. The court awarded Mr. Vance the proceeds of the certificates of deposit and title to the ambulance service and its assets. Mrs. Vance was awarded her separate property, including the proceeds of the insurance policies, and various items of personal property. The marital home and the automobile were ordered sold, the proceeds to be divided equally.[1]

■ On appeal, Mrs. Vance contends that she was entitled to one-half of the proceeds of the certificates of deposit and of the ambulance business and its assets pursuant to our equitable distribution statute, W.Va.Code § 48–2–32 (1986 Replacement Vol.). The premise of the equitable distribution statute is the presumption that, in the absence of a valid separation agreement, the marital property of the parties to a divorce should be divided equally between them. W.Va.Code §§ 48–2–32(a), (c). The trial court may, however,

alter this distribution, without regard to fault, based on consideration of certain statutorily enumerated factors, including: (1) monetary contributions to marital property such as employment income, other earnings, and funds which were separate property; (2) non-monetary contributions to marital property, such as homemaker services, child care services, labor performed without compensation, labor performed in the acual maintenance or improvement of tangible marital property, or labor performed in the management or investment of assets which are marital property; (3) the effect of the marriage on the income-earning abilities of the parties, such as contributions by either party to the education or training of the other party, or foregoing by either party of employment or education; or (4) conduct by either party that lessened the value of marital property. W.Va.Code § 48–2–32(c) (1986).

Syllabus point 1, in part, *Somerville v. Somerville*, 179 W.Va. 386, 369 S.E.2d 459 (1988). After considering these factors, the circuit court is required to distinguish the separate property of the respective parties from their marital property and to determine the value of the marital assets before proceeding with their distribution to the parties. W.Va.Code §§ 48–2–32(d)(1)—(3).

■ As an initial matter, we conclude that at the time of the separation, the ambulance business and the certificates of deposit constituted marital property subject to equitable distribution. W.Va.Code § 48–2–1(e) (1986 Replacement Vol.) defines "marital property" as:

(1) All property and earnings acquired by either spouse during a marriage including every valuable right and interest, corporeal or incorporeal, tangible or intangible, real or personal, regardless of

---

1. The remaining household goods and personal property were ordered divided equally between the parties, and Mrs. Vance was awarded rehabilitative alimony in the amount of $300 per month for a period of twenty-four months. These awards are not in dispute in this appeal.

the form of ownership, whether legal or beneficial, whether individually held in trust by a third party, whether held by the parties to the marriage in some form of co-ownership such as joint tenancy with the right of survivorship, or any other form of shared ownership recognized in other jurisdictions without this state except that marital property shall not include separate property as defined in subsection (f) of this section; and

(2) The amount of any increase in value in the separate property of either of the parties to a marriage, which increase results from (a) an expenditure of funds which are marital property, including an expenditure of such funds which reduces indebtedness against separate property, extinguishes liens, or otherwise increases the net value of separate property, or (b) work performed by either or both of the parties during the marriage.

"Separate property" is defined in W.Va. Code § 48–2–1(f) as:

(1) Property acquired by a person before marriage; or

(2) Property acquired by a person during marriage in exchange for separate property which was acquired before the marriage; or

(3) Property acquired by a person during marriage, but excluded from treatment as marital property by a valid agreement of the parties entered into before or during the marriage; or

(4) Property acquired by a party during marriage by gift, bequest, devise, descent or distribution; or

(5) Property acquired by a party during a marriage but after the separation of the parties and before the granting of a divorce, annulment or decree of separate maintenance; and

(6) Any increase in the value of separate property as defined in subdivision (1), (2), (3), (4), or (5) of this subsection which is due to inflation or to a change in market value resulting from conditions outside the control of of the parties.

Although title to the ambulance business was acquired by Mr. Vance prior to the marriage and, therefore, was his separate property at the time of the marriage, the evidence shows that at least part of the purchase price was paid from the earnings of the parties after the marriage. Moreover, it is clear that immediately after the marriage, both parties took an active part in the operation of the business, and Mrs. Vance obtained additional training in order to participate more fully in all aspects of the business. In 1977, following the unsuccessful attempt to sell the business, the parties assumed joint ownership of the business and divided the corporate stock evenly between themselves. Although Mr. Vance asserted below that the transfer of stock to his wife was an oversight or a mistake, he admitted that he was aware of the arrangement at the time and that he had no objection to it.

In 1981, Mrs. Vance transferred her interest in the business to her husband. Mr. Vance testified that she did so voluntarily due to an apprehension of personal liability for debts of the corporation following a claim against the business by the Department of Labor, in effect making a gift to him of her stock. The uncontradicted testimony of Mrs. Vance, however, shows that this claim was settled shortly after the parties reacquired the business in 1977, over three years before the stock transfer occurred. Moreover, the evidence showed that shortly before the stock transfer, Mrs. Vance had separated from her husband. Mrs. Vance testified that after the parties reconciled, Mr. Vance badgered her for weeks to transfer her interest in the business to his name and that she ultimately agreed to the transfer "just to have peace". Mrs. Vance continued to work full-time in the business, and, in fact, apparently ran the business alone for two years after her husband became disabled.

In these circumstances, we believe the ambulance business constituted marital property at the time of the separation. The business was purchased, at least in part, with the parties' earnings during the marriage. These funds were clearly marital property within the meaning of W.Va. Code § 48–2–1(e). The active and equal participation of Mrs. Vance in the operation of the business almost from its inception lends it the air of a joint enterprise. Mrs.

Vance's acquisition of one-half of the corporate stock in 1977 and Mr. Vance's acquiescence in his wife's joint ownership of the business until 1981 appears to be nothing more than a formalization of the parties' informal understanding of their respective roles in the ambulance business. At that point, the business would clearly have been considered marital property.

Nor do we believe the 1981 stock transfer changed the character of this asset for purposes of this proceeding. We have recognized that in equitable distribution cases

> in order for property that is transferred from one spouse to the other during marriage to be excluded from the marital property pool, there must be proof that the property was intended as an irrevocable gift. In this regard, jewelry and fur coats are the type of "gift" that can almost be proven by circumstantial evidence; however, when real property, stocks, bonds, or other stores of family wealth are at stake, it requires considerably more than the simple fact that property was transferred from one spouse to the other to establish a qualified ... gift. In all instances, the burden of proof is upon the spouse who would claim the gift.

*Roig v. Roig*, 178 W.Va. 781, 785, 364 S.E.2d 794, 798 (1987). *See* W.Va.Code § 48–3–10 (1986 Replacement Vol.). In view of the sharp conflict in the evidence as to the circumstances surrounding the 1981 stock transfer, and of the fact that Mrs. Vance's role in running the ambulance service actually increased thereafter, we cannot say that Mr. Vance met his burden of establishing a gift from his wife of her interest in the ambulance business. Accordingly, we conclude that the business and its assets were marital property subject to equitable distribution.

Mr. Vance also admitted that he accumulated the money to purchase the certificates of deposit from his earnings during the marriage. Mr. Vance argues that these funds were his separate property by virtue of an informal agreement or understanding with his wife made during the marriage. However, an agreement between husband and wife is unenforceable unless it is in writing. W.Va.Code § 48–3–9 (1986 Replacement Vol.). In the absence of a valid agreement, and in view of the conflicting evidence as to the existence of any informal agreement or understanding as to separate ownership of the funds used to purchase the certificates of deposit, we believe the better course is to treat the proceeds of those investments as marital property.

Having determined that the principal assets of the parties during the marriage constituted marital property, it is necessary to determine the appropriate distribution of these assets between them. At the hearing below both parties presented testimony in support of their respective claims for adjusting the presumptive equal distribution of these assets. The evidence is sharply conflicting.

It is uncontested, for example, that Mrs. Vance contributed $13,000 to the cost of the marital home through her donation of the Mitchell Heights lot and the proceeds of the sale of the Crooked Creek home. Mr. Vance asserted, however, that he had contributed $6,000 worth of materials and labor to improvements and repairs to the Crooked Creek home prior to the marriage. Mrs. Vance, on the other hand, estimated that improvements and repairs to the Crooked Creek home cost no more than $1,000 and stated that she paid for all materials and labor involved therein from her separate funds prior to the marriage.

Mr. Vance also asserted that at the time of the marriage he had $10,000 in separate funds in a savings account. Mrs. Vance was unaware of this account, and Mr. Vance produced no bank records to prove its existence. Mr. Vance stated that he applied these separate funds to the purchase of the ambulance business and to the down payment on the construction costs of the Mitchell Heights home. Mr. Vance later admitted, however, that he had also applied his earnings during the marriage to pay part of these costs and was unable to state how much, if any, of his separate savings he had applied to either project.

It does appear that Mr. Vance made a substantial economic contribution to the acquisition of the business prior to the marriage. It is equally apparent, however, that Mrs. Vance was responsible for a substantial non-economic contribution to the marriage in the form of homemaker and child rearing services, a factor apparently not taken into consideration by the trial court. Moreover, while there is no contention that Mrs. Vance was not adequately compensated for her work in the ambulance business, it is uncontested that her paycheck was used exclusively to pay the household expenses and bills of the parties. The extent to which Mrs. Vance was allowed to share equally in her husband's earnings and the use made of such funds during the marriage was hotly disputed in the proceedings below.

 In summary, it appears that Mr. Vance made a greater economic contribution to the marriage than did Mrs. Vance. It is equally clear, however, that the circuit court here did not consider the value of Mrs. Vance's non-economic contributions, clear error under the equitable distribution statute. *See* W.Va.Code § 48–2–32(c)(2). Moreover, in view of the conflicting and inconsistent evidence before the lower court, we cannot say that either of the parties here has overcome the statutory presumption in favor of the equal distribution of the marital assets. Accordingly, we conclude that the circuit court erred in not dividing the marital property, including the proceeds of the certificates of deposit and the ambulance business and its assets, equally between the parties.[2]

For the reasons stated herein, we reverse the decision of the Circuit Court of Logan County and remand this case to that court with directions to effect an equal distribution between the parties of the marital assets discussed herein in accordance with the provisions of W.Va.Code § 48–2–32.

**2.** Mr. Vance also contends that the automobile was an asset of the corporation, rather than the joint property of the parties, and that the proceeds of the life insurance policies awarded to Mrs. Vance were marital property in that 60% of the premiums were paid during the marriage. No evidence was offered on either issue at the

REVERSED AND REMANDED WITH DIRECTIONS.

hearing below. However, in view of our resolution of the other issues in this case, we would not expect the distribution of the marital property to be materially affected by the inclusion of the life insurance policies in the marital estate or by the designation of the automobile as an asset of the corporation.