396 S.E.2d 439

**Johnnie M. KOONTZ**

v.

**Mary Hawk KOONTZ.**

No. 19122.

Supreme Court of Appeals of West Virginia.

July 20, 1990.

---

John G. Ours, Petersburg, for Mary H. Koontz.

Harry R. McCulloh, Petersburg, for Johnnie M. Koontz.

PER CURIAM:

This case is before the Court upon the appeal of Mary Hawk Koontz, the defendant below, from a final order of the Circuit Court of Grant County. The appellee is Johnnie M. Koontz. We have reviewed the petition for appeal, the record, and briefs of the parties. We are of the opinion that this case should be reversed and re-

**1.** Mr. Koontz testified that before they lived together, they had occasionally stayed together but his future wife continued to "spend time out

manded to the circuit court for further proceedings.

I

The appellant and appellee were married on December 21, 1985. Prior to their marriage, the parties lived together for at least one and one-half years in a house owned by Mr. Koontz.[1]

Mr. Koontz's house was destroyed by fire and was then washed away by a flood on November 4, 1985. Mr. Koontz collected fire insurance on his house and personal property and received additional gifts and donations. Of these monies, Mr. Koontz placed $40,000 in a certificate of deposit titled in his name "POD [pay on death] to Mary Koontz." On April 7, 1986, Mr. Koontz redeemed the certificate of deposit to pay the construction costs for a new house and placed the proceeds, $40,752.95, in a joint checking account. Mrs. Koontz's name had been added to this checking account on January 6, 1986.

The parties purchased a lot in Petersburg upon which to build a house. The deed for this lot, which was recorded almost one year later, lists "Johnnie M. Koontz and Mary V. Koontz, his wife," as joint tenants with right of survivorship. The seller of the lot testified that Mr. Koontz told him not to put Mrs. Koontz's name on the deed. Mr. Koontz testified to the same. There is a controversy, however, as to why Mrs. Koontz's name was actually put on the deed.

A house was erected on the lot. The circuit court found that the fair market value of this property is $60,000.

Shortly after the purchase of the lot, but before the house was erected, the parties separated. Mrs. Koontz withdrew $15,000 from the joint checking account and placed it in a newly opened account in her own name. Following a reconciliation with her husband, Mrs. Koontz applied some of the funds she had previously withdrawn to the construction of the new house. Both Mr. and Mrs. Koontz helped build the house.

at her home at her mother's because at that time her mother was sick." Mrs. Koontz testified that they began living together in October, 1982.

Mrs. Koontz testified that she installed insulation and did all of the painting and varnishing in the house.

No children were born of this marriage.

The family law master recommended a divorce be granted on the grounds of irreconcilable differences, determined that the house was Mr. Koontz's separate property and that the joint checking account funds, although completely spent for house construction, were marital property. The family law master recommended that Mrs. Koontz be awarded $18,532 based on the joint checking account funds.

The family law master's recommended decision concluded that it was not the voluntary act of Mr. Koontz to jointly title the real estate and that Mr. Koontz did not make a gift of a one-half undivided interest in this property to Mrs. Koontz. Therefore, the family law master concluded that this property upon which the house was constructed is not marital property.

The family law master's recommended decision also awarded no alimony.[2]

In April, 1989, the circuit court granted a divorce on the ground of irreconcilable differences, and adopted most of the family law master's recommendations.[3]

The appellant, Mrs. Koontz, raises two assignments of error pertaining to distribution of the real estate and alimony.

## II

Mrs. Koontz contends that the circuit court committed error by concluding that she is not entitled to an equitable distribution of one-half of the real estate, the fair market value of which is $60,000.

Recently, in *Whiting v. Whiting*, 183 W.Va. 451, 396 S.E.2d 413 (1990), this Court discussed issues pertaining to the classification of property as separate or marital.[4]

■ In syllabus point 3 of *Whiting*, we noted the legislature's preference for classifying property as marital as opposed to separate: "W.Va.Code, 48-2-1(e)(1) (1986), defining all property acquired during the marriage as marital property except for certain limited categories of property which are considered separate or nonmarital, expresses a marked preference for characterizing the property of the parties as marital property."[5]

**2.** The family law master's recommended decision also provided for allocation of court costs, payment of certain bills and distribution of personal property.

**3.** The circuit court determined that Mrs. Koontz had spent $1,844 of the $15,000 she withdrew on joint obligations; therefore, the court deducted the $1,844 from the joint checking account balance of $40,752 and then equally divided the balance of $38,909.

**4.** Classifying property as separate or marital is only the first of three steps in the equitable distribution process.

Equitable distribution under W.Va.Code, 48-2-1, *et seq.*, is a three-step process. The first step is to classify the parties' property as marital *or* nonmarital. *The second step is to* value the marital assets. The third step is to divide the marital estate between the parties in accordance with the principles contained in W.Va.Code, 48-2-32.

*Whiting*, syl. pt. 1. *See* 27B C.J.S. *Divorce* § 529, at 538 (1986).

**5.** *W.Va.Code*, 48-2-1 was amended in 1990. However, the 1986 version as it pertains to this case, remained unchanged. *W.Va.Code*, 48-2-1(e)(1) provides:

(e) 'Marital property' means:

(1) All property and earnings acquired by either spouse during a marriage, including every valuable right and interest, corporeal or incorporeal, tangible or intangible, real or personal, regardless of the form of ownership, whether legal or beneficial, whether individually held, held in trust by a third party, or whether held by the parties to the marriage in some form of co-ownership such as joint tenancy or tenancy in common, joint tenancy with the right of survivorship, or any other form of shared ownership recognized in other jurisdictions without this state, except that marital property shall not include separate property as defined in subsection (f) of this section[.]

*W.Va.Code*, 48-2-1(f) provides, in relevant part:

(f) 'Separate property' means:

(1) Property acquired by a person before marriage; or

(2) Property acquired by a person during marriage in exchange for separate property which was acquired before the marriage; or

(3) Property acquired by a person during marriage, but excluded from treatment as marital property by a valid agreement of the parties entered into before or during the marriage; or

■ Counsel for Mr. Koontz, the appellee, contends in this appeal that the appellant, Mrs. Koontz, failed to affirmatively prove that Mr. Koontz had made a gift of a one-half interest in the real estate when the property was jointly titled.

However, Mrs. Koontz does not bear the burden of proving that a gift was made by Mr. Koontz.

■ Rather, the standard is noted in syllabus point 4 of *Whiting*. There, we held:

Where, during the course of the marriage, one spouse transfers title to his or her separate property into the joint names of both spouses, a presumption that the transferring spouse intended to make a gift of the property to the *marital estate* is consistent with the principles underlying our equitable distribution statute.

(emphasis supplied)

We pointed out in *Whiting* that this presumption may be rebutted by a showing that there was no intent to transfer to joint ownership.

Furthermore, *W.Va.Code*, 48–3–10 [1984] provides:

Where one spouse purchases real or personal property and pays for the same, but takes title in the name of the other spouse, such transaction shall, in the absence of evidence of a contrary intention, be presumed to be a gift by the spouse so purchasing to the spouse in whose name the title is taken: Provided, That in the case of an action under the provisions of article two [§ 48–2–1 et seq.] of this chapter wherein the court is required to determine what property of the parties constitutes marital property and equitably divide the same, the presumption created by this section shall not apply, and a gift between spouses must be affirmatively proved.

We pointed out in *Whiting* that this statutory provision "is consistent with the view of other jurisdictions that joint titling implies a gift to the marital estate[.]" 183 W.Va. at 459, 396 S.E.2d at 421.

Neither the record in this case nor the circuit court's order, which was based upon the family law master's recommended decision, addresses the property transaction in this case in relation to the *marital estate.* Instead, the circuit court's focus was on whether a gift was made to the *other spouse,* namely, Mrs. Koontz.

Under the principles we set forth in *Whiting,* the joint titling of the real property in this case is presumed to be a gift to the *marital estate.* Consequently, Mr. Koontz, as noted above, must rebut the presumption that it was intended as a gift to the marital estate.

■ Mr. Koontz points out that the real property at issue in this case was purchased with funds from the insurance proceeds that he received, and, therefore, he maintains that all of the real property should have been awarded to him. This contention raises issues concerning ownership of funds deposited in the joint checking account, which is not raised by the appellant, Mrs. Koontz. However, we note that we addressed in *Whiting* the possibility that property which is viewed as marital may have nonmarital components. We held:

W.Va.Code, 48–2–1(e)(2) (1986), provides for a marital property component to separate property to the extent that the value of the separate property is increased by the expenditure of marital resources. In this instance, the statute permits a tracing of the parties' respective contributions to the property in order to determine the marital and nonmarital components. This statute has no application where the property has been jointly titled and the presumption of gift

(4) Property acquired by a party during marriage by gift, bequest, devise, descent or distribution; or
(5) Property acquired by a party during a marriage but after the separation of the par-

ties and before the granting of a divorce, annulment or decree of separate maintenance[.]

to the marital estate has not been rebutted.[6]

*Whiting,* syl. pt. 5.

We also discussed in *Whiting* the "source of funds" doctrine, which has been recognized in the absence of statutes similar to *W. Va. Code,* 48–2–1(e)(2). In syllabus point 6, however, we concluded that "[t]he source of funds doctrine is ordinarily not available to characterize as separate property that property which has been transferred to joint title during the marriage."

Accordingly, this case must be remanded to the circuit court to reconsider its decision in light of the principles set forth in *Whiting.*

## III

The appellant, Mrs. Koontz, also contends that the circuit court erred by adopting the findings and conclusions of the family law master that neither party should be awarded alimony.

Because of our decision in section II of this opinion, and the effect that it may have upon the distribution of property, the circuit court should reconsider the denial of alimony.

Specifically, *W. Va. Code,* 48–2–16(b)(5) [1984] provides that a factor that must be considered in awarding alimony is "[t]he distribution of marital property to be made under the terms of a separation agreement or by the court[.]"

Accordingly, upon remand, the circuit court should consider an award of alimony in conjunction with the other aspects of this case.

## IV

Finally, Mr. Koontz, in a separate petition for appeal, which we granted, basically cross-assigned several errors relating to the circuit court's decision which were adverse to him.

Primarily, Mr. Koontz maintains that the circuit court could not divide the joint bank account between the parties because there was no written disclosure of assets of the parties. Therefore, Mr. Koontz contends that there was no evidence in the record to substantiate the exact joint bank account or accounts owned by the parties at the time this suit was filed.

Although our review of the record indicates that there was ample evidence of the existence of a joint bank account, Mr. Koontz will have the opportunity upon remand to bring forth any more evidence which he views is necessary to the disposition of this case.

Mr. Koontz also questions the circuit court's jurisdiction to render a decision and award property in this case where the property, in this case the bank account, has been expended and was no longer in existence at the time the suit was filed. Counsel has failed to supply any supporting authorities on this position, and, therefore, we will not address it.

## V

Accordingly, we reverse and remand this case to the Circuit Court of Grant County, for further proceedings consistent with this opinion.

Reversed and remanded.

NEELY, Chief Justice, dissenting:

Because this opinion is the fruit of the "poisonous tree" of *Whiting v. Whiting,* 183 W.Va. 451, 396 S.E.2d 413 (1990), I dissent. Once again the majority opinion is based on a misunderstanding of human nature, an incorrect statutory interpretation and a flawed analysis of legislative intent. *See Whiting, Id.* (Neely, C.J., dissenting).

---

6.  *W. Va. Code,* 48–2–1(e)(2) provides, in pertinent part:

(e) 'Marital property' means:

. . . .

(2) The amount of any increase in value in the separate property of either of the parties to a marriage, which increase results from (A) an expenditure of funds which are marital property, including an expenditure of such funds which reduces indebtedness against separate property, extinguishes liens, or otherwise increases the net value of separate property, or (B) work performed by either or both of the parties during the marriage.

The decision by the majority in this case highlights the failures of *Whiting*.

The issue in this case concerned the interest Mrs. Koontz had in a jointly titled house and the bank account, both of which came from insurance proceeds paid on a house owned by Mr. Koontz before his brief marriage to Mrs. Koontz. The majority opinion applies *Whiting*'s presumption in favor of marital property disregarding the *W.Va.Code*, 48–3–10 [1984] requirement of an affirmative proof of a gift between the spouses.[1]

## I

The circuit court determined that the house was separate property based on the testimony of the seller of the lot who said that Mr. Koontz told him to title the house only in Mr. Koontz's name and that Mr. and Mrs. Koontz argued about the title. The record also indicates that the marriage was of brief duration and that the lot and house were paid for from Mr. Koontz's separate property.

*W.Va.Code*, 48–2–1(f) [1986], includes in the definition of separate property, "[p]roperty *acquired* in exchange for separate property which was acquired before the marriage...." (Emphasis added). The house in this case was acquired, through insurance proceeds, in exchange for Mr. Koontz's burned and flooded house. If the majority correctly applied *Whiting*'s rebuttal presumption, Mr. Koontz would be awarded the house because the record shows that the house was titled jointly to get Mrs. Koontz to return the money needed to finish the house. The majority notes that there was "a controversy" as to why Mrs. Koontz's name was put on the home. However, the majority fails to disclose that immediately after Mr. Koontz directed the

lot's seller to title the lot in his name only, Mrs. Koontz, taking $15,000 from the joint checking account, went to Richmond to visit her girlfriend. Although a reconciliation followed, Mrs. Koontz and the money returned only after Mr. Koontz agreed to title the lot jointly.

Other courts have refused to consider the property as marital in similar circumstances.[2] *See Peterson v. Peterson*, 595 S.W.2d 889 (Tex.Civ.App.1980) (refusing to find a gift based on joint title, when the wife refused to move into the house unless her name was added to the title); *Mochida v. Mochida*, 5 Haw.App. 348, 691 P.2d 771 (1984) (refusing to consider the house as marital property because "by use of threats Wife 'forced' [husband] to place the residence in their joint names"). The failure of the majority to recognize that the presumption was rebutted in this case, reinforces my criticism that the majority is creating "marital property" by fiat. The majority's determination that the record does not address the "property transaction in this case in relation to the *marital estate*" (Emphasis in original) 183 W.Va. at 455, 396 S.E.2d at 417 is wrong.

Sometimes separate property can become marital property by gift. In *Roig v. Roig*, 178 W.Va. 781, 364 S.E.2d 794, 798 (1987), this Court discussed the type of proof required to show that the property was intended as a irrevocable gift.[3]

In this regard, jewelry and fur coats are the type of "gift" that can almost be proven by circumstantial evidence, however, when real property, stock, bonds, or other stores of family wealth are at stake, it requires considerably more than the simple fact that property was transferred from one spouse to the other to establish a qualified *Code*, 48–2–1(f)(4)

---

1. *W.Va.Code*, 48–3–10 [1984], provides in pertinent part that "a gift between the spouses must be affirmatively proved" at the time of a divorce. *See Whiting Id.* (Neely, C.J., dissenting for a discussion of this code section and our recent cases requiring the spouse claiming the gift to bear the burden of proving that a gift was made).

2. *Whiting, supra* 183 W.Va. at 459, 396 S.E.2d at 421 notes that the presumption can be overcome

"by a showing that the transferring spouse did not intend to transfer the property to joint ownership or was induced to do so by fraud, coercion, duress, or deception. (Citations and footnote omitted)." The majority's failure to recognize that the facts of this case rebut the marital presumption, indicate that *Whiting*'s presumption is absolute.

3. *See Whiting, Id.* (Neely, C.J., dissenting for a discussion of *Roig, supra*.)

[1986] gift. In all instances, the burden of proof is upon the spouse who would claim the gift.

This holding in *Roig* was in part based on an understanding that "[m]ost people do not intend unjustly to enrich the other man." *Id.; Patterson v. Patterson,* 167 W.Va. 1, 277 S.E.2d 709 (1981).

Other jurisdictions also treat interspousal gifts the same as gifts from third parties, requiring an intention to make a gift, delivery, and acceptance. *See Moser v. Moser,* 117 Ariz. 312, 572 P.2d 446 (1977); *Potter v. Potter,* 280 Ark. 38, 655 S.W.2d 382 (1983); *In re Marriage of Weinstein,* 128 Ill.App.3d 234, 83 Ill.Dec. 425, 470 N.E.2d 551 (1984); *Smith v. Smith,* 472 A.2d 943 (Me.1984); *Lowry v. Lowry,* 375 Pa.Super. 382, 544 A.2d 972 (1988).

In addition to a signed agreement and gift, this Court has recognized that a spouse's intent to change separate property into marital property can be shown by certain fact patterns. In *Vance v. Vance,* 180 W.Va. 63, 375 S.E.2d 427, 430–31 (1988), an ambulance business begun by Mr. Vance before his marriage was determined to have become marital property by the time of the divorce. Among the factors considered to show the change into a joint enterprise, and, therefore, marital property, were: (1) payment of part of the purchase price was made with marital earnings; (2) both parties actively participated in the operation of the business (in fact Mrs. Vance ran the business alone for two years); (3) additional training was taken by Mrs. Vance to participate more fully in all aspects of the business; and (4) the stock was jointly owned at some time in the business. In *Caldwell v. Caldwell,* 177 W.Va. 61, 350 S.E.2d 688, 691 (1986), this Court indicated that although the down payment for the marital home was made with separate funds, the house at the time of the divorce was considered marital property.[4] Among the factors this Court considered to show the changes were: (1) the length of the marriage, (2) the joint obli-

gation for the mortgage payments, and (3) the use of the property as the marital home. *Dodd v. Hinton,* 173 W.Va. 69, 312 S.E.2d 293 (1984), we noted that at common law, a spouse's use of separate funds to purchase a marital home, titled jointly created a presumption of the gift of a half interest in the house. Although the presumption of gift no longer applies at the time of divorce (*W.Va.Code,* 48–3–10 [1984]), a joint purchase agreement, a joint note and a joint mortgage for the marital home can indicate the spouses' intent to consider the marital home as marital property. *See Everly v. Schoemer,* 139 W.Va. 392, 80 S.E.2d 334 (1954).

Although the question of changing separate property in marriage must be considered on the individual facts, at least the following criteria should be considered to determine if change has occurred: (1) length of the marriage, (2) use of the property by both parties, especially use as a marital home, (3) title of the property, (4) attempts to keep property separate, (5) records for separate property, (6) use of marital funds to pay debt owed on property, (7) note and debt instrument used to secure debt owed on property (a joint obligation suggesting the property is marital), (8) control exercised over the property, (9) investment in the property of marital effort, control, and time, and (10) a showing of unjust enrichment. No one factor, for example joint title, should be conclusive. *See infra* section II for a discussion of legal title. In most cases where the marriage lasts many years and the mortgage, a joint obligation, is paid with marital funds, the marital home, even if the down payment was made with separate funds, should be considered divisible marital property.

In the present case, the circuit court was correct in classifying the house as separate property and the majority is wrong in failing (1) to classify it based on how it was *acquired,* (2) to require the spouse claiming the gift to bear the burden of proving it

---

**4.** *Caldwell, supra,* has an unusual fact pattern because the parties remarried after a property

settlement in the first divorce.

and (3) even under *Whiting,* to recognize that the marital property presumption was rebutted because Mrs. Koontz appropriated $15,000 in cash of Mr. Koontz's money and agreed to return the money only in consideration of joint title to the house.[5]

## II

The jointly titled bank account is another example of property incorrectly presumed to be marital property by the majority.[6] The money in the account was *"acquired ... during the marriage in exchange for separate property ..."* (Emphasis added). *W.Va.Code,* 48–2–1(f)(2) [1986]. The record indicates that Mr. Koontz deposited the money in the joint checking account so Mrs. Koontz could also write checks to pay the two men who worked on the house and for building supplies. Again Mrs. Koontz did not affirmatively prove that the funds in the joint account were meant to be a gift as required by *W.Va.Code,* 48–3–10 [1984]. Furthermore, Mr. Koontz presented sufficient evidence to rebut *Whiting's* presumption. *See Whiting, Id.* (Neely, C.J., dissenting) (noting that many couples jointly title property simply for ease of administration).

Bare legal title should not be determinative of what constitutes marital property. Parties to a marriage do not contemplate divorce throughout the marriage; therefore, in the same spirit that business property is returned to the original owner, absent an agreement to the contrary, when a business partnership terminates, so also separate property, even if jointly titled, remains separate property and should be returned to the original owner in a divorce. In *LaRue v. LaRue,* 172 W.Va. 158, 304 S.E.2d 312 (1983) *(overruled on other grounds, Butcher v. Butcher,* 178 W.Va. 33, 357 S.E.2d 226 (1987)),* a spouse who made a material economic contribution toward property titled in the name or under the control of the other spouse was allowed to claim an equitable interest in such property under the concept of unjust enrichment. *Id.* 172 W.Va. at 167, 304 S.E.2d at 320; *Patterson, supra* (fashioning a constructive trust theory to secure the wife's interest in property to which she had contributed); *McComas v. McComas,* 178 W.Va. 133, 358 S.E.2d 217 (1987) (marital funds transferred to a separate account remained marital property.) *Cross v. Cross,* 178 W.Va. 563, 363 S.E.2d 449 (1987) (pension benefits acquired during a marriage, irrespective of the nominal owner of the right or interest, are marital property). *See Marshall v. Marshall,* 166 W.Va. 304, 273 S.E.2d 360 (1981) (recognizing a fiduciary relationship between spouses).

Our refusal to consider the title of the property as conclusive proof of the ownership of property is consistent with our holdings in other areas. *Dodd v. Hinton,* 173 W.Va. 69, 312 S.E.2d 293, 296 (1984) (the presumption of joint ownership of funds in a joint account "may be overcome by competent evidence.") *Keyes v. Keyes,* 182 W.Va. 802, 392 S.E.2d 693 (1990) (certificate of title for an automobile is not conclusive proof of ownership); *Commercial Credit Corporation v. Citizens National Bank,* 148 W.Va. 198, 133 S.E.2d 720 (1963); *See generally* Note, "Purchase Money Resulting Trust in West Virginia," 39 *W.Va.L.Rev. (W.Va.L.Q.)* 58 (1932), and cases cited therein.

Other examples of titling for ease of administration include: *Grant v. Grant,* 119 Ariz. 470, 581 P.2d 704 (1978) (joint bank accounts may contain separate funds merely for the convenience of the parties); *Lofton v. Lofton,* 23 Ark.App. 203, 745 S.W.2d 635, 640 (1988) (Corbin, J. concurring) ("Depositing inherited funds in a joint account is typically done as a matter of

---

5. The record indicates that both Mr. and Mrs. Koontz worked on the house. Any *increase* in the value of the house because of "work performed by either or both of the parties during the marriage" should be considered marital property under *W.Va.Code,* 48–2–1(e)(2)(B) [1986]. *See* Syllabus Point 2, *Shank v. Shank,* 182 W.Va. 271, 387 S.E.2d 325 (1989).

6. The record indicates that the joint account contained at least $40,752.95 in April 1986. Of this amount, the insurance proceeds on Mr. Koontz's destroyed house accounted for $40,000 and the rest was interest in a certificate of deposit titled in Mr. Koontz's name only. The money was used primarily to pay construction costs and it was from this account the Mrs. Koontz withdrew the $15,000 to go on vacation.

convenience with the only legal consideration being the avoidance of probate").

Classification of property either as marital or separate must be determined on when and how the property was acquired. *W.Va.Code*, 48–2–1(e), and (f) [1986]. Some property, especially money, can have a dual classification, part marital and part separate.[7] In cases of dual property the statute indicates that the property be classified based on the source of funds used to create the property. *See W.Va.Code*, 48–2–1(e)(2), (f)(6) [1986]. The source-of-funds rule emphasizes the marital partnership theory, because the marital unit receives the benefit of the spouses' time, earnings and effort. *Dyer v. Tsapis*, 162 W.Va. 289, 291–92, 249 S.E.2d 509, 511 (1978) ("The law which once saw marriage as a sacrament now conceptualizes it as roughly analogous to a business partnership.") Cases in other jurisdictions that have adopted a source-of-funds rule include: *Hoffmann v. Hoffmann*, 676 S.W.2d 817 (Mo.1984); *Harper v. Harper*, 294 Md. 54, 448 A.2d 916 (1982); *Tibbetts v. Tibbetts*, 406 A.2d 70 (Me.1979); *In re Marriage of Moore*, 28 Cal.3d 366, 168 Cal.Rptr. 662, 618 P.2d 208 (1980); *Stahl v. Stahl*, 91 Idaho 794, 430 P.2d 685 (1967); *McLeod v. McLeod*, 74 N.C.App. 144, 327 S.E.2d 910 (1985); *Nolan v. Nolan*, 107 A.D.2d 190, 486 N.Y.S.2d 415 (1985); *Jackson v. Jackson*, 298 Ark. 60, 765 S.W.2d 561 (1989); *Frank G. W. v. Carol G.W.*, 457 A.2d 715 (Del.Sup.1983); *Nardini v. Nardini*, 414 N.W.2d 184 (Minn.1987).

In *Spielman v. Spielman*, 181 W.Va. 178, 381 S.E.2d 377 (1989), this Court traced a husband's separate funds, used to pay off a lien on the wife's trailer, in the net value of the trailer. In *Kaminsky v. Kaminsky*, 178 W.Va. 786, 364 S.E.2d 799, 803 (1987), Justice Brotherton, writing a unanimous opinion, recognized that tracing in a given case can be especially difficult when the property is subject to a number of transactions, but required the circuit court to use tracing so that "the proceeds from the sale of separate property and all earnings on those proceeds remain the separate property of Mr. Kaminsky."

The process of tracing separate funds is similar to the process currently followed in determining parties' contributions to the marital estate from "[f]unds which are separate property." *W.Va.Code*, 48–2–32 [1984]. *See Caldwell v. Caldwell*, 177 W.Va. 61, 350 S.E.2d 688 (1986).

The classification of appreciated property should be based on cause of the appreciation. *W.Va.Code*, 48–2–1(e)(2), (f)(6) [1986]. *See* Syllabus Points 1 and 2, *Shank v. Shank*, 182 W.Va. 271, 387 S.E.2d 325 (1989).

In rejecting the source of funds doctrine, the majority fails to provided the circuit court with any way to examine the jointly titled checking account except to classify it as marital property. In essence, the majority continues the ill-advised and unjustified redistribution of property begun in *Whiting*. In this case, the majority redistributes Mr. Koontz's insurance proceeds so that Mrs. Koontz will receive part of both the house and the checking account. The result is that Mr. Koontz is caught because he was "so naive as to have relied on the old law" (*Whiting, Id.*) (Neely, C.J., dissenting) and allowed his family the use of his separate property.

---

**7.** In *Whiting, supra*, the majority recognizes the source of funds doctrine to determine the "marital property component to separate property" (*Id.* 183 W.Va. at 459, 396 S.E.2d at 421) but

refuses to acknowledge that the source of funds doctrine can be applied to property that is composed of separate and marital property.