285 S.E.2d 889 (1981)
ENVIRONMENTAL PRODUCTS CO., INC.
v.
Danny S. DUNCAN, Etc., et al.
No. 15203.
Supreme Court of Appeals of West Virginia.
December 2, 1981.
Dissenting Opinion January 8, 1982.
Bowles, McDavid, Graff & Love and Gerard S. Stowers, Charleston, for appellant.
Wood, Grimm & Delp and Bert M. Grimm, Jr., Huntington, for appellees.
*890 HARSHBARGER, Chief Justice:
Danny Duncan began work for Environmental Products Co., Inc. on February 20, 1978, and took an equipment-estimator training course given by his employer with government-paid veteran assistance. About three months later he was assigned to Environmental's Huntington territory as a salesman and worked continuously until he resigned in late December, 1979.
When he was hired he was told he would earn one thousand dollars per month, but soon would earn between eighteen thousand and twenty-five thousand dollars annually. He did not then sign a contract, and in January, 1979, he received a seven hundred dollar per month raise, and another two hundred dollar per month raise in March, 1979.
His first contract, dated April 1, 1979,[1] contained these relevant paragraphs:
8. Disclosure Information. Employee recognizes that the list of customers is a valuable, special and unique asset of Environmental's business. Employee shall not, during or after the term of his employment, disclose the list of customers to any person, firm or corporation.
. . . . .
12. Restrictive Covenant. Upon termination of this agreement at the end of the initial or any renewal term, or upon termination during the initial or any renewal term for any reason other than breach by Environmental, Employee agrees that he will not for a period of two years within a radius of 250 miles from the principal place of business of Environmental directly or indirectly own, manage, operate, control, be employed by, participate in, or be connected in any manner with the ownership, management, operation or control of any business similar to the type of business conducted by Environmental and its subsidiaries at the time of the termination of this agreement.
Phil Gandy, Vice-President of Environmental Products, testified that prior to Duncan's April 1 contract, his other salesmen had contracts containing identical restrictive covenants. Duncan's job and responsibilities were no different after than before he signed this contract.
In early January, 1981, Duncan commenced employment with defendant Tri-State Controls, Inc. On January 22, 1981, Environmental Products filed a complaint and sought a circuit court injunction to prohibit Duncan's employment with and dissemination of confidential information, trade secrets and customer lists to Tri-State. Putnam County Circuit Judge James O. Holliday denied a preliminary injunction, and Environmental Products came here and was again denied. Now Environmental Products appeals Judge Holliday's decision that the contract was void as an unenforceable restraint of trade and that the covenant was geographically overbroad.
If a covenant not to compete is contracted after employment has been commenced without restriction, there must be new consideration to support it. Pemco Corp. v. Rose, W.Va., 257 S.E.2d 885, 889 (1979). In Pemco, we found that neither Virginia nor West Virginia had decided whether continued employment is adequate consideration for a new contract, and divined that it would not be adequate in Virginia. It certainly is not adequate here.
Environmental contended there was adequate consideration in a salary change, a guaranteed bonus, and profit-sharing, and the trial court agreed.[2] This record, however, *891 does not support that conclusion. Duncan was promised a salary change at his initial employment in 1978, and he received two raises before March, 1979. His contract was dated April, 1979, and recited a salary Duncan was already receiving. A profit-sharing plan was then available to all employees, not just salesmen, whether or not they signed a contract. The "guaranteed bonus" was not guaranteed at all because it was only "in such amount as the Board of Directors of Environmental in its sole discretion shall determine." Duncan received a bonus in 1978 and received one in 1979, gratuities that certainly did not make future bonuses assured, nor prove an expectancy that might be thought new consideration.
His contract, therefore, did not alter any benefits, conditions or terms of employment; it only imposed limitations. Those are void for lack of consideration.
We need not decide whether the covenants' restrictions were reasonable, whether they were bargained for, or what effect our Antitrust Act, Code, 47-18-1 et seq., has on covenants not to compete.
"`[I]t is not the reasons assigned upon which the [lower] court decided a question that is to be reviewed, but the action of the court itself; and the question always in the appellate court is, whether the judgment to be reviewed is correct.' Syl. pt. 5, State ex rel. Dandy v. Thompson, 148 W.Va. 263, 134 S.E.2d 730 (1964), in part." McAllister v. McAllister, W.Va., 276 S.E.2d 321 (1981), Syllabus Point 2.
We affirm.
Affirmed.
NEELY, Justice, dissenting:
When he began work for Environmental Products Company Inc. in the spring of 1978, Danny Duncan was an entry level employee. As such he could have lost his employment at the will of his employer at any time without notice. By all indications he progressed satisfactorily and received two raises within his first year of employment. Pleased with his performance his employer offered him a contract which, while it placed some restraints on him, gave him another week's vacation, guaranteed him a bonus, and provided thirty days notice before termination.
I perceive the above chronology to reflect a logical process of employee hiring, training and retention. Before the signing of the contract, Environmental Products quite rightly viewed Mr. Duncan as a novice with whom the company might or might not wish to enter into an employment contract, depending on his development. Had Mr. Duncan either quit during the training or been discharged because of poor performance there would have been no restrictions on his subsequent employment. But upon an employee's successfully completing the training and being promoted from a cub salesman to a full salesman, it was the policy of Environmental Products to enter into a contract with the employee which contract included the covenant not to compete.
The majority has assailed this altogether logical process. The majority concluded that when a covenant not to compete is contracted after employment has been commenced without such a covenant, there must be new consideration to support it. Unfortunately, the majority has relied upon Pemco Corp. v. Rose, W.Va., 257 S.E.2d 885 (1979), to sustain its position. Pemco turned on this Court's determination that a contract of employment was in effect prior to the actual signing of the contract which included the covenant not to compete. Given that finding, the result in Pemco is sound. However, in the case before us today there was no prior contract of employment between Duncan and Environmental Products. Hence, Pemco does not apply, and the covenant not to compete cannot be interpreted as an additional condition to an existing contract. Even if the facts would sustain a finding of a prior contract in this case, I nevertheless feel that the granting of an extra week's paid vacation, the guaranteeing *892 of a yearly bonus, and the provision for notice of termination constitutes sufficient further consideration.
Accordingly I dissent from the majority's threshold analysis of whether the covenant not to compete either needed to be or actually was supported by additional consideration. Whether the geographical area covered by the covenant was unreasonable is a different question, but if it were unreasonable the proper action for a lower court would be to narrow the geographical boundaries to reasonable limits.
NOTES
[1] Environmental's evidence was that this contract was made in March and postdated. Duncan testified it was made in May and backdated. This oral testimony contradicts a clear, unambiguous written contract and should have been excluded or ignored. Holiday Plaza, Inc. v. First Federal Savings and Loan Association, W.Va., 285 S.E.2d 131 (1981); Leasetronics, Inc. v. Charleston Area Medical Center, Inc., W.Va., 271 S.E.2d 608 (1980).
[2] In its memorandum letter-opinion, the court found as fact that Duncan had become a salesman during 1978 and was a salesman after the April 1, 1979 contract signing. Without citing evidence to support its conclusion, the learned court opined that there was adequate consideration. This conclusion appears unsupported by evidence or by findings of fact.