334 S.E.2d 611

## WEIRTON ICE & COAL CO., DIVISION OF STARVAGGI INDUS., INC.

### v.

## WEIRTON SHOPPING PLAZA, INC.

### No. 16277.

Supreme Court of Appeals
of West Virginia.

Submitted Jan. 17, 1985.

Decided May 10, 1985.

Rehearing Denied June 11, 1985.

---

W. Dean De La Mater, De La Mater, Hagg & Bohach, Weirton, for appellee.

Frank Cuomo, Jr., Marc B. Chernenko, William E. Watson & Associates, Wellsburg, for appellant.

MILLER, Justice:

This appeal by Weirton Shopping Plaza, Inc., (Shopping Plaza) involves the statute of limitations on an action brought on an account which the Shopping Plaza maintained with the Weirton Ice and Coal Supply Company (Supply Company). The Circuit Court of Hancock County concluded that the action was not time barred. The Shopping Plaza argues that the court's ruling was erroneous, and that the period commenced running when the last charge was made against the account. We conclude that the circuit court did not err.

In 1960, the Shopping Plaza was formed by three individuals, two of whom were officers of the Supply Company, for the purpose of constructing a shopping plaza in Weirton. The Supply Company undertook to pay, and did pay, certain bills connected with this project. After the Supply Company had paid the bills, a Mr. Bundy, who was its vice president, and who was also a shareholder in the Shopping Plaza, prepared a memorandum directing the Supply Company to invoice the Shopping Plaza for $107,360. The invoice was issued and entered on the ·Supply Company's accounts receivable ledger. A short time later, the Shopping Plaza made a $7,360 payment, leaving the account's balance at $100,000 in May, 1963.

Around the same time, the Supply Company consolidated certain other payments it had made on behalf of the Shopping Plaza into a notes receivable account which after a $53,505 payment was made by the Shopping Plaza, had a net balance of $100,000. On May 23, 1963, these two accounts were combined, making a total of $200,000 owed by the Shopping Plaza. There appears to be no dispute that the officers of the two companies discussed payment of this account and agreed that the interest would be 6 percent and that annual principal payments would be made in the amount of $10,000.

In the ensuing years, the Shopping Plaza made a number of payments by check to the Supply Company. These checks carried such notations as "payment on note" and "partial payment on note—bal. $170,-000.00." In 1966, Mr. Bundy took full control of the Shopping Plaza, and from January, 1966 through November, 1971, the Shopping Plaza paid interest on the debt on a regular monthly basis. On the checks, however, the debt was referred to as an account or a loan. In addition to interest payments, all scheduled principal payments were made through 1969. The result was that the notes receivable ledger of the Supply Company on August 17, 1970, showed that the Shopping Plaza owed $130,000.

No principal payment was made in 1971, and on May 5, 1972, the Supply Company filed suit against the Shopping Plaza alleging in part in its complaint that:

"(1) The defendant owes the plaintiff on an account on which the last principal payment was made on the 17th day of August, 1970, the sum of One Hundred Thirty Thousand Dollars ($130,000.00).

"(2) The defendant owes the plaintiff as interest on said account at the rate of six percent (6%) per annum from the inception thereof through the 23rd day of April, 1972, the sum of Eighteen Thousand Sixty-five and 57/100 Dollars ($18,-065.57).

"(3) Interest continues to accrue from the 23rd day of April, 1972, at the rate of Six Hundred Fifty Dollars ($650.00) per month."

In conjunction with its answer to the complaint, the Shopping Plaza moved to dismiss on the ground that "any claim which the plaintiff may have is barred on the Statute of Limitations inasmuch as there is no note or writing evidencing indebtedness and that any claims that the plaintiff had were on an open account subject to a five (5) year Statute of Limitations."

A trial without a jury was conducted in the case on August 25, 1980, September 30, 1981, January 27, 1982, and January 28, 1982. After the conclusion of the trial, the circuit court issued an opinion in the case, in which it found that:

"8. No one was able to testify to the existence of a promissory note; nor was a promissory note found among any of the records of the plaintiff corporation.

"9. The last payment shown on the ledger sheet (Plaintiff's Exhibit Number 1) was made on August 1, 1970. Mr. Bundy, as Secretary of the Defendant corporation, also made certain prior payments to the Plaintiff corporation under the direction of other officers of the Defendant. The last payment he made was in 1970.

. "10. The records of the Defendant corporation contained an 'accounts payable' or 'notes payable' item due to the Plaintiff in the amount of One Hundred Thirty Thousand Dollars ($130,000.00). This entry is carried into financial statements and in connection with income tax returns of the Defendants."

■ Although the parties have invited us to explore several issues, we believe that only one of them needs to be answered to resolve this case: Did the checks issued by the Shopping Plaza, in partial payment of its debt, and bearing notations to that effect, constitute written acknowledgments of indebtedness sufficient to revive a time-barred cause of action under W.Va.Code, 55–2–8?[1] This statute essentially provides that if a debtor acknowledges his debt, in writing, such acknowledgment extends the original statute of limitations on the claim by a like period from the date of the acknowledgment. In construing this section, we said in Syllabus Point 1 of *Preston County Coke Co. v. Preston County L & P Co.*, 146 W.Va. 231, 119 S.E.2d 420 (1961), that:

"The provisions of Section 8, Article 2, Chapter 55, Code, 1931, expressly require a signed writing to constitute a new promise or an acknowledgment from which such promise may be implied and that such promise or acknowledgment be incorporated in a writing signed by the promisor or his agent; and to remove an account from the operation of the five year statute of limitations created and imposed by Section 6, Article 2, Chapter 55, Code, 1931, there must be an express promise to pay or, if there be a mere acknowledgment, it must be unqualified, without condition, importing liability and operation of the said sixth section, or deprive any party of the benefit thereof. An acknowledgment in writing as aforesaid, from which a promise of payment may be implied, shall be deemed to be such promise within the meaning of this section."

This issue was argued below and briefed by the parties on appeal. Although it did not furnish the basis for the lower court's judgment, we may affirm the decision of that court when it appears that such judgment is correct on any ground disclosed by the record regardless of the reason assigned by the trial court for its judgment. *E.g.*, Syllabus Point 4, *N.C. v. W.R.C.*, 173 W.Va. 434, 317 S.E.2d 793 (1984); *Chambers v. Sovereign Coal Corp.*, 170 W.Va. 537, 295 S.E.2d 28 (1982); Syllabus Point 2, *Environmental Products Co. v. Duncan*, 168 W.Va. 349, 285 S.E.2d 889 (1981); Syllabus Point 3, *Barnett v. Wolfolk*, 149 W.Va. 246, 140 S.E.2d 466 (1965).

1. W.Va.Code, 55–2–8, provides:

"If any person against whom the right shall have so accrued on an award, or on any such contract, shall by writing signed by him or his agent promise payment of money on such award or contract, the person to whom the right shall have so accrued may maintain an action or suit for the moneys so promised within such number of years after such promise as it might originally have been maintained within upon the award or contract, and the plaintiff may either sue on such a promise, or on the original cause of action, and in the latter case, in answer to a plea under the sixth section [§ 55–2–6], may, by way of replication, state such promise, and that such action was brought within such number of years thereafter; but no promise, except by writing as aforesaid, shall take any case out of the

willingness to pay without reference to a future settlement, and it must be determinate and unequivocal so as to be tantamount to an express promise to pay."

See also *Findley v. Cunningham*, 53 W.Va. 1, 44 S.E. 472 (1903); *Stiles v. Laurel Fork Oil & Coke Co.*, 47 W.Va. 838, 35 S.E. 986 (1900); *Abrahams v. Swann*, 18 W.Va. 274 (1881). We also stated in Syllabus Point 2 of *Preston County Coke Co.* that:

> "A promise sufficient to toll the statute of limitations should be made directly to the creditor or some person acting for him, and declarations or admissions to strangers are not sufficient for that purpose."

■ It is important to note that our statute does not require any special language. The only condition expressly imposed by the statute is the requirement that the new promise or acknowledgment shall be in writing and signed by the debtor or his agent. *Hill v. Ringgold*, 112 W.Va. 374, 375, 164 S.E. 412, 413 (1932).

Such writing need not contain an express promise to pay, or even an affirmative statement of willingness or intent to pay, because a willingness to pay can be inferred from an unqualified admission of indebtedness, as we said in *Stansbury v. Stansbury's Adm'rs*, 20 W.Va. 23, 29 (1882):

> "The current of modern authority establishes, that the burden of removing the statutory bar rests upon the plaintiff, and that the acknowledgement or admission must not only be unqualified in itself, but that there must be nothing in the attendant acts or declarations of the defendant to modify it, or rebut *the inference of willingness to pay, which naturally and prima facie arises from an unqualified admission*." (Emphasis added).

*Accord First Nat'l Bank in Canyon v. Gamble*, 134 Tex. 112, 132 S.W.2d 100 (1939); *Ford v. Sweet*, 224 Va. 374, 297 S.E.2d 657 (1982); 54 C.J.S. *Limitations of Actions* § 317 at 399 (1948); 1A A. Corbin, Corbin on Contracts § 216 at 297 (1963); 1 S. Williston, A Treatise on the Law of Contracts § 166 at 669 (3d ed. 1957).

■ A writing may be sufficient even though it requires some explanatory evidence. In the single Syllabus of *Hill*, we held that extrinsic evidence can be used to make certain the amount of the debt:

> "Under Code 1931, 55–2–8, a new promise which will vivify a stale demand must be positive in all respects. The promise need not specify a fixed sum, provided the amount of the debt can be readily ascertained."

We elaborated more fully on this concept in Syllabus Point 5 of *Abrahams v. Swann*, 18 W.Va. 274 (1881):

> "If such acknowledgment or promise is contained in a letter of the defendant to the plaintiff, it is not necessary, that the amount of the debt or that its date should be specified in the letter, but the particular debt, to which the letter refers, may be identified by extrinsic evidence written or parol; and if so identified clearly, and the promise is unequivocal, or the acknowledgment is of a subsisting debt, for which the defendant is liable and willing to pay, the bar of the statute of limitations is thereby removed."

■ In the case at bar, many of the checks issued by the Shopping Plaza to the Supply Company bear notations indicating that they are payments of principal or interest on the account and stating the current balance due.[2] These notations constitute clear and unequivocal acknowledgments, unaccompanied by qualification, reservation or condition, of a valid and existing debt. The checks on which they appear are writings which have been signed by the party to be bound and delivered to its creditor. Furthermore, the debt referenced by

---

**2.** The following notations are typical:

February 21, 1966—"Interest on 170,000 @ 5% for Feb."
September 25, 1967—"On acc—Bal. now 150,000.00"
August 17, 1970—"Payment on loan—Balance due $130,000.00"
September 1, 1970—"Sept int on $130,000"
February 1, 1971—"Feb. int. on loan"
June 1, 1971—"June interest on $130,000"

these checks is readily ascertainable. The check dated August 17, 1970, is the last check issued in payment on the principal by the Shopping Plaza, and, as indicated by its notation set out in note 2, *supra,* it showed the amount claimed by the Supply Company as due and owing on the account, i.e., $130,000. This sum was also reflected in the financial records and income tax returns of the Shopping Plaza as an outstanding obligation.

The Shopping Plaza argues that these checks do not satisfy the requirements of W.Va.Code, 55–2–8, and relies on *Preston County Coke Co.,* which held that the debtor corporation's balance sheets and annual report[3] displaying an obligation to the creditor did not prevent the statute of limitations from barring the suit. Unlike the checks in this case, the financial documents in *Preston County Coke Co.* were not both signed by the party to be charged, and delivered to the creditor, as the Court noted:

> "The foregoing documents prepared by the defendant expressly and unconditionally state an existing liability in a precise amount and may indicate willingness of the defendant to pay such amount; but the balance sheets do not constitute a promise or an acknowledgment in writing that has been signed by the defendant or its agent as expressly required by statute, and the annual report, though signed by the defendant, was never delivered to the plaintiff or some person acting for it." 146 W.Va. at 247, 119 S.E.2d at 430.

A number of decisions from other jurisdictions have held that checks with notations may be sufficient writings under statutes similar to W.Va.Code, 55–2–8, to revive a time-barred claim. *See generally* 51 Am.Jur.2d *Limitation of Actions* § 345 at 841–42 (1970); 54 C.J.S. *Limitations of Actions* § 317 at 400 (1948); Annot., 125 A.L.R. 271 (1940); Annot., 28 A.L.R. 84 (1924). In *Bickers v. Pinnell,* 199 Va. 444, 100 S.E.2d 20 (1957), there were three checks with the following notations:

(1) "Int. Bond $4500 @ 4% to Aug. 1, 1950."

(2) "a/C Int Bond 4500 to Feb 1, 1951."

(3) "Int Bond $4500.00 to 2/1/1952 @ 4% full."

The debtor also wrote a letter to a bank acknowledging the existence of the subsequently disputed debt. The court held that the checks, as well as the letter, satisfied the requirement of an acknowledgment in writing from which a promise to pay could be inferred.

The Texas courts have also allowed notated checks to revive a time-barred claim. In *First Nat'l Bank in Canyon v. Gamble,* 134 Tex. 112, 132 S.W.2d 100 (1939), there were several checks bearing the notation "Int." or "Int. on Note." The court held that these checks, together with extrinsic evidence to identify the note referred to, satisfied the statutory requirement of a written "acknowledgment of the justness of the claim." Similarly, in *Trautmann Bros. Inv. Corp. v. Delmar Conservation Dist.,* 440 S.W.2d 314 (Tex.Civ.App.1969), the court held that a check bearing the notation "Partial payment of note dated April 30, 1962" removed the time bar.

In *Middlebrooks v. Cabaniss,* 193 Ga. 764, 20 S.E.2d 10 (1942), the court held that checks bearing the notation "Payment on my and W.O. Moon note" or similar expressions, met the requirements of Ga.Code § 3–903 where the creditor testified that there was only one note made by the debtor to him. Section 3–903, which has been renumbered as § 9–3–112, provided that: "A payment entered upon a written evidence of debt by the debtor or upon any other written acknowledgment of the existing liability shall be equivalent to a new promise to pay."

The Iowa courts have also addressed this question, holding that a check bearing the notation "Interest 1935, 6 months," plus a ledger entry for the exact amount of the check, satisfied the requirement of a writing admitting that an indebtedness is un-

---

**3.** Although numerous checks were issued in *Preston County Coke Co.,* it does not appear that any of them bore notations. In any event, their sufficiency as writings under W.Va.Code, 55–2–8, was not raised by the parties or addressed by the Court.

paid. *Leland v. Johnson,* 227 Iowa 520, 288 N.W. 595 (1939). In *Wentland v. Stewart,* 236 Iowa 661, 19 N.W.2d 661 (1945), a statute of limitations defense was defeated by a check bearing the notation "[t]o apply on interest on the M. Edith Stewart Farm." It is clear from these decisions that a notation on a debtor's check acknowledging the existence of the debt can constitute a sufficient writing to extend the statute of limitations under W.Va.Code, 55–2–8. The checks in this case met the requirements of this section.

We, therefore, affirm the judgment of the Circuit Court of Hancock County.

Affirmed.