395 S.E.2d 225

**Helen Bevis CARAWAY**

v.

**Bobby Lamar CARAWAY.**

**No. 19113.**

Supreme Court of Appeals of West Virginia.

June 28, 1990.

**227**

R. Joseph Zak, Charleston, for Helen Bevis Caraway.

Robert E. Holroyd, Johnson, Holroyd & Gibson, Princeton, for Bobby Lamar Caraway.

PER CURIAM:

The appellant, Helen Bevis Caraway, appeals an order of the Circuit Court of Summers County, dated May 5, 1988, and a supplemental order of that court dated October 3, 1988, which granted the parties a divorce on the grounds of irreconcilable differences and provided for the distribution of the parties' marital property. The appellant contends that she is entitled to: (1) retain sole ownership of the parties' real property; (2) reinstatement of the special commissioner's award of alimony in the sum of $1.00; (3) one-half of the proceeds from the sale of the parties' cattle; (4) an award of attorney's fees and costs incurred from December 4, 1988 to the present; and (5) payment by the appellee, Bobby Lamar Caraway, of all premiums due under the appellee's life insurance policy. We find no reversible error, and accordingly, the judgment of the trial court is affirmed.

The parties were married in Shreveport, Louisiana, on May 28, 1952. The appellee attained a doctoral degree in veterinary medicine in 1955, and subsequently enlisted in the United States Air Force. Although the appellant primarily performed the traditional duties of a housewife, she also worked during the marriage and obtained a master's degree in library science.

The parties lived together as husband and wife until December 13, 1984, at which time they separated. The appellant initiated this action in 1985 seeking a divorce from the appellee on the grounds of irreconcilable differences.

Pursuant to an agreement of the parties, this divorce action was referred to a special commissioner for a hearing and recommendation. Hearings were conducted before the special commissioner on December 4, 1986, and February 18, 1987.

On September 16, 1987, the special commissioner issued a report. Among the numerous recommendations in the report, the special commissioner had recommended that: (1) the appellant receive alimony in the sum of $1.00; (2) the appellant receive one-half of the proceeds from the entire sale of the parties' cattle; (3) the appellee be responsible for all costs and attorney's fees incurred after December 4, 1986; and (4) the appellee pay the premiums under the appellee's insurance policy in order to maintain the appellant as the irrevocable beneficiary. The appellee filed exceptions to these particular recommendations.

The parties appeared before the circuit court on December 10, 1987. On May 5, 1988, the circuit court entered an order modifying the special commissioner's report and ordering that: (1) the appellant's request for alimony in the sum of $1.00 be

denied; (2) the appellant receive one-half of the proceeds remaining from the cattle sale after certain expenses are deducted rather than receive one-half of the entire proceeds from the sale; (3) the parties equally bear the costs of the entire proceedings and pay their own attorney's fees; and (4) the appellant, rather than the appellee, pay the premiums under the appellee's life insurance policy in order to remain the irrevocable beneficiary of that policy.

The circuit court adopted the special commissioner's recommendations that: (1) the appellee pay the appellant one-half of the appellee's military pension; (2) the appellant pay the appellee one-half of the appellant's pension in the account at the time of separation; (3) the appellee provide continued medical coverage and other dependent military benefits for the appellant; and (4) the appellee receive an undivided one-half interest in the parties' real property. The appellant appeals the modifications ordered by the circuit court.

### I

At the time of the divorce, the appellant had title to certain real property located in Summers County which the appellee contended was owned by both parties.[1] The appellee was receiving a monthly military pension benefit of which the appellant was claiming one-half. In the order granting the parties a divorce, the circuit court directed the parties "to explore the possibility of arriving at a formula to so disentangle the parties and to provide to the [appellee] the opportunity of purchasing the [appellant's] pension rights." The parties, however, were unable to reach an agreement. The circuit court, therefore, entered a supplemental order dated October 3, 1988, ordering that the appellee was entitled to an undivided one-half interest in the real property and that the appellant was entitled to a one-half interest in the appellee's pension rights.

On appeal, the appellant contends that she is entitled to retain sole ownership of the parties' real property as an offset to satisfy vested pension rights under the guidelines set forth in *Cross v. Cross*, 178 W.Va. 563, 363 S.E.2d 449 (1987). In *Cross*, however, this Court hesitated "to dictate any specific technique for distributing pension benefits at divorce because each pension plan case presents a different set of problems." 178 W.Va. at 568, 363 S.E.2d at 454. However, we suggested some broad guidelines for the circuit courts to consider in distributing pension benefits in syllabus point 5:

> When a court is required to divide vested pension rights that have not yet matured as an incident to the equitable distribution of marital property at divorce, the court should be guided in the selection of a method of division by the desirability of disentangling parties from one another as quickly and cleanly as possible. Consequently, a court should look to the following methods of dividing pension rights in this descending order of preference unless peculiar facts and circumstances dictate otherwise: (1) lump sum payment through a cash settlement or off-set from other available marital assets; (2) payment over time of the present value of the pension rights at the time of divorce to the non-working spouse; (3) a court order requiring that the nonworking spouse share in the benefits on a proportional basis when and if they mature.

The circuit courts are not required to follow the guidelines suggested by this Court in syllabus point 5 of *Cross*. These are merely methods of distribution for the circuit courts to consider. The circuit courts are, however, bound by the equitable distribution provisions set forth in *W.Va.Code*, 48-2-32 [1984]. In the instant case, the circuit court divided the real prop-

---

1. The appellee testified that he had placed title to the real property in the appellant's name for probate purposes to avoid the inheritance tax in effect at the time the property was purchased. The appellant argued that the real property was a gift from the appellee to her. Both the special commissioner and the circuit court rejected this argument. *See W.Va.Code*, 48-3-10 [1984] and *Roig v. Roig*, 178 W.Va. 781, 364 S.E.2d 794 (1987) (the burden of proof is upon the spouse who would claim the gift).

erty and the military pension benefits in accordance with the provisions of *W.Va. Code*, 48–2–32 [1984], and thus, we cannot conclude that the trial court's ruling on this issue was an abuse of discretion.

## II

■ The appellant next assigns as error the circuit court's modification of the special commissioner's recommendation that the appellant be awarded alimony in the sum of $1.00 to protect her right in the future to seek modification of the award.[2]

The appellant testified that her health was "about what most fifty-six-year-old women would have," and further stated that she did not have any health problems that kept her from working. She did state, however, that she suffers from an arthritic condition. The appellant's annual income is $32,567.00. The appellant has been awarded one-half of the appellee's pension, which represents a monthly payment of approximately $798.00, and the appellee has also been ordered to maintain a military health card for the appellant so that she is entitled to medical benefits.

■ The issue of whether to award any party alimony is within the sound discretion of the court as we stated in the syllabus of *Nichols v. Nichols*, 160 W.Va. 514, 236 S.E.2d 36 (1977): "Questions relating to alimony and to the maintenance and custody of the children are within the sound discretion of the court and its action with respect to such matters will not be disturbed on appeal unless it clearly appears that such discretion has been abused." Given the evidence in the record before us, we cannot conclude that the trial judge abused his discretion in denying an award of alimony. Therefore, we believe that the trial court's judgment on this issue should be affirmed.

## III

The appellant also objects to the trial court's distribution of the proceeds from the sale of the parties' cattle. The appellee had sold approximately twenty cattle for $16,577.41, and spent $8,115.71 of the proceeds. The appellee testified that he spent the money on his hired labor and repairing the marital home. The appellee further testified that he did not claim any expenses for his own labor and that the parties had agreed that he could spend some of these proceeds on repairing the marital home.

The circuit court ordered the appellee to pay the appellant the sum of $4,230.85 as her share of the cattle sale. In awarding the appellant $4,230.85, the circuit court explained that it was recognizing the appellee's right "to deduct certain expenses for labor in connection with the production of the farm income, which amount is $8,115.72[.]" The appellant maintains that she is entitled to one-half of the entire proceeds from the sale, or $8,288.70, and that the circuit court erred in awarding her only $4,230.85.

■ *W.Va.Code*, 48–2–32(f) [1984] requires a circuit court to explain in the order granting the divorce the reasons for making any division of property as we recognized in syllabus point 2 of *Somerville v. Somerville*, 179 W.Va. 386, 369 S.E.2d 459 (1988): "In any order making a division of marital property, the trial court must set out in detail its findings of fact and conclusions of law and the reasons for dividing the property in the manner adopted. *W.Va.Code*, 48–2–32(f) (1986)."

■ We further stated in syllabus point 3 of *Somerville:* "An order directing a division of marital property in any way other than equally must make specific reference to factors enumerated in § 48–2–32(c), and the facts in the record that support application of those factors."

2. We shall not address the issue of whether the award of alimony in the sum of $1.00 protects the appellant's right to seek a modification of that award in the future. We do note, however, that where a final divorce decree makes no award of alimony, the divorce decree cannot be subsequently modified to grant alimony. *Savage v. Savage*, 157 W.Va. 537, 203 S.E.2d 151 (1974).

**230**

In addition to the expenses associated with the farm, the appellee used part of the proceeds from the cattle sale to improve the marital home, of which the appellant owns a one-half interest. Clearly, the appellant benefits from the improvements to the marital home since she owns one-half interest in that property. Furthermore, of the $8,461.70 remaining from the cattle sale after the foregoing expenses were deducted, the circuit court awarded the appellant one-half of the proceeds, or $4,230.85. Considering the facts before us, we cannot conclude that the trial judge abused its discretion.

## IV

The appellant also maintains that she is entitled to an award of attorney's fees and costs that she incurred from December 4, 1988, to the present. This Court has recognized that questions relating to costs are within the sound discretion of the trial court. *Somerville v. Somerville, supra; Cummings v. Cummings,* 170 W.Va. 712, 296 S.E.2d 542 (1982); *State ex rel. Trembly v. Whiston,* 159 W.Va. 298, 220 S.E.2d 690 (1975). We cannot say that, under the facts of this case, the circuit court's ruling that each party should pay his and her own attorney's fees and costs was an abuse of discretion.

## V

Finally, the appellant argues that she is entitled to payment by the appellee of all premiums due under the appellee's insurance policy since, pursuant to an oral argument, she waived all of her future rights to survivor benefits under the appellee's military pension in exchange for his

promise to maintain his life insurance policy for her irrevocable benefit. Based upon the facts before us, however, we cannot conclude the circuit court's ruling was clearly wrong in ordering the appellant to pay the premium without reimbursement from the appellee.[3] Syl. pt. 3, *Bickler v. Bickler,* 176 W.Va. 407, 344 S.E.2d 630 (1986); syl. pt. 3, *Taylor v. Taylor,* 128 W.Va. 198, 36 S.E.2d 601 (1945).

Thus, for the reasons set forth herein, we conclude that the order of the Circuit Court of Summers County should be affirmed.

Affirmed.

---

**3.** Under *W.Va.Code,* 48–3–9 [1931], an agreement between a husband and wife is unenforceable unless it is in writing. *See Vance v. Vance,* 180 W.Va. 63, 67, 375 S.E.2d 427, 431 (1988); *Dodd v. Hinton,* 173 W.Va. 69, 71, 312 S.E.2d 293, 295 (1984). *W.Va.Code,* 48–3–9 [1931] specifically provides that "[a] contract between a husband and wife shall not be enforceable at law, unless such contract, or some memorandum or note thereof, be in writing and signed by the party to be charged thereby."

We find nothing in the record which indicates that this agreement was reduced to writing.

What the record does show, however, is that the appellant's waiver of any survivor benefits in the appellee's retirement pension increased the monthly pension payment. Both the appellant and the appellee have equally benefitted by the increased monthly pension payment since the appellant has been awarded one-half of the appellee's military pension. Since the appellant has benefitted from the increased monthly pension payments, we conclude that the circuit court did not abuse its discretion in its ruling on this issue.